FILED

October 20, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 12:32 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **HARVEY J. AMOS** | ) | **Docket Nos: 2016-05-0348** |
| **Employee,** | ) | |
| | ) | |
| **v.** | ) | **State File Numbers: 27681-2016** |
| | ) | |
| **GOODMAN GLOBAL GROUP** | ) | |
| **Employer,** | ) | **Judge Dale Tipps** |
| **And** | ) | |
| | ) | |
| **INDEMNITY INS. CO. OF NORTH** | ) | |
| **AMERICA** | ) | |
| **Insurance Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

This matter came before the undersigned workers' compensation judge on October 18, 2016, on the Request for Expedited Hearing filed by the employee, Harvey Amos, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Mr. Amos is entitled to temporary disability benefits for his alleged neck injury. The central legal issue is whether Mr. Amos came forward with sufficient evidence for the Court to determine that he is likely to establish at a hearing on the merits he suffered an injury arising primarily out of and in the course and scope of his employment. For the reasons set forth below, the Court holds Mr. Amos is not entitled to the requested temporary disability benefits at this time.[1]

### History of Claim

The following facts were established at the Expedited Hearing. Mr. Amos suffered a work injury to his cervical spine while working at Goodman in 2010. Goodman accepted the claim as compensable and the parties settled the claim in the

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

Chancery Court of Lincoln County on August 10, 2011. The settlement Order describes the injury as a disc herniation at the C4-5 level that was treated by Dr. Cyrus Ghavam. It also provided that Mr. Amos retained his statutory right to future medical treatment. (Ex. 4.)

Mr. Amos returned to work at Goodman, although he occasionally had "flare-ups" of neck pain. He testified that he was working as a set-up man on Friday, October 23, 2015. He did not describe any injury or incident occurring at work that day. Instead, after he went home that evening, he began having pain, tingling, and numbness in his arm. He called Goodman over the weekend to try to report the problem and spoke to Bobby Griffin in Goodman's first aid facility the following Monday. He told Mr. Griffin about his symptoms.

Mr. Amos testified he had to wait about two months before seeing a doctor. Once Goodman authorized treatment, Mr. Amos saw Dr. Cyrus Ghavam, the authorized doctor from his 2010 claim. Mr. Amos confirmed that Goodman provided all his recent medical treatment, including cervical surgery, under the open medical provision of his 2010 injury. When the MRI ordered by Dr. Ghavam showed a herniated disc at the C3-4 disc level, a different level than that involved in his prior claim, Mr. Amos realized he had a new injury.

Mr. Amos agreed on cross-examination that the delay in starting treatment was actually about three weeks and that the delay was the result of Goodman having to retrieve his original workers' compensation file from storage. He also confirmed that the onset of his pain and numbness occurred at home. Mr. Amos admitted he felt no symptoms while at work and there was no specific injury incident. He agreed with a statement contained in his affidavit that he initially asked for treatment under his open medical settlement. He testified he did not know he had a new injury until Dr. Ghavam performed the MRI.

Terri Owens is the claims manager for Goodman. She testified that Mr. Amos informed her on October 26, 2015, that he was having another flare-up and needed to return to the doctor. She told him the file was probably in archives and it would take a couple of weeks to retrieve it. Once the claims adjuster recovered the file, Goodman made Mr. Amos an appointment with Dr. Ghavam.

Records from The Orthopedic Center show that Mr. Amos first returned to Dr. Ghavam on November 18, 2015, with complaints of neck and arm pain and weakness. Imaging studies showed a solid fusion at C4-5 from the prior injury. Dr. Ghavam ordered a cervical MRI and instructed Mr. Amos to remain off work. On December 23, Dr. Ghavam noted the MRI showed stenosis at C3-4, "which to some extent is accelerated by the C4-5 fusion." He prescribed physical therapy and work restrictions. At Mr. Amos' follow-up visit on February 3, 2016, Dr. Ghavam noted: "He has

2

developed significant junctional stenosis above his fusion. The contribution to this degenerative change is about 3% a year from the prior fusion level and about 25% likelihood of adjacent segment pathology within ten years. His surgery was about five to six years ago." Dr. Ghavam recommended anterior cervical disc fusion surgery. (Ex. 6.)

Mr. Amos returned to Dr. Ghavam on March 30, 2016, for post-surgical follow-up. Dr. Ghavam felt he was doing well and noted:

> There has been issue as to whether the C3-4 was related to the initial injury or whether there was a separate injury. Early on, I was not advised that there had been a second injury or did not document it. Mr. Amos identifies that he was injured a second time either in late October or early November 2015, at which time he developed increased recurrence of symptoms. The initial surgery was in 2010 when I did the C4-5 ACDF. The second injury, if in fact was documented, would more likely be the causative factor for his recent surgery.

Dr. Ghavam kept Mr. Amos off work and told him to return in six to eight weeks. (Ex. 2.)

On May 18, 2016, Dr. Ghavam noted Mr. Amos was doing well and returned him to work. He also stated:

> As an administrative matter, I apparently made an error in terms of his injury. The initial injury that he sustained was on 09/09/2010, and I treated the C4-5 level at that time. He had a new injury that occurred in October 2015, which resulted in the C3-4 level becoming herniated and requiring surgical treatment. My understanding is that we have attributed all of his injuries to his first injury, but in fact the C4-5 level is related to the 09/09/2010 injury and the C3-4 level is related to the new injury that occurred in 2015.

(Ex. 3.)

Mr. Amos filed a Petition for Benefit Determination seeking temporary disability benefits. The parties did not resolve the disputed issues through mediation, the Mediating Specialist filed a Dispute Certification Notice, and Mr. Amos filed a Request for Expedited Hearing.

At the Expedited Hearing, Mr. Amos asserted he is entitled to temporary total disability benefits for the time he missed work due to his surgery and recovery. He contended that, because his C3-4 disc herniation was not present during his 2010 medical treatment, it represents a new compensable injury.

3

Goodman contended Mr. Amos is not entitled to any workers' compensation benefits for his alleged 2015 injury. It argued that his condition is merely a continuation of his prior injury, and Goodman has continued to provide treatment for that injury pursuant to the terms of the settlement agreement. Goodman insisted it received no notice of any new injury and argued that Mr. Amos cannot meet his burden of proving his injury arose primarily out of and in the course and scope of his employment.

**Findings of Fact and Conclusions of Law**

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Mr. Amos need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id*.; Tenn. Code Ann. § 50-6-239(d)(1)(2015).

To prove a compensable injury, Mr. Amos must show that his alleged injury arose primarily out of and in the course and scope of his employment. *Id*. at § 50-6-102(14). To do so, he must show an incident, or specific set of incidents, identifiable by time and place of occurrence caused his injury. *Id*. at § 50-6-102(14)(A). Further, he must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." *Id*. at § 50-6-102(14)(C). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *Id*. at § 50-6-102(14)(D).

Applying these principles to the facts of this case, the Court cannot find Mr. Amos appears likely to meet his burden of proof. He testified there was no specific injury or incident at work that caused his symptoms. Under these circumstances, Mr. Amos has not presented any evidence of an incident, or specific set of incidents, identifiable by time and place of occurrence. Further, while the statute contemplates compensable injuries that are the result of gradual or cumulative events or trauma, Mr. Amos presented no proof of any such activities. Instead, he testified that the onset of his symptoms occurred at home and he did not even realize he had a new injury until he had an MRI.

Mr. Amos also failed to meet the requirements of the second part of the analysis – medical proof that his work was the primary cause of his injury. While Dr. Ghavram attributed the C3-4 level "to the new injury that occurred in 2015," he did not identify the injury or suggest it occurred at Mr. Amos' work.

The Court found Mr. Amos to be credible and truthful. It also understands why he

would believe the new disc herniation must be the result of a new work injury. However, the Court cannot infer, from the mere existence of an injury, that the injury arose primarily out of Mr. Amos' employment.

Therefore, the Court holds, as a matter of law, Mr. Amos has not come forward with sufficient evidence that he is likely to prevail at a hearing on the merits. The Court denies his request for temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Amos' claim against Goodman and its workers' compensation carrier for the requested temporary disability benefits is denied.

2. This matter is set for an Initial (Scheduling) Hearing on December 20, 2016, at 10:30 a.m.

**ENTERED this the 20th day of October, 2016.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Affidavit of Harvey Amos
2. March 30, 2016 TOC record
3. May 18, 2016 TOC record
4. August 10, 2011 Order Approving Settlement
5. Wage Statement
6. Records of Dr. Cyrus Ghavam
7. Letters from Daryl Weir and Victor Dixon (Identification Only)

Technical record:[2]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Benefits was sent to the following recipients by the following methods of service on this the 20th day of October, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
| --- | --- | --- | --- | --- |
| Harvey Amos | X | | | 25 Plada Heights Rd. Fayetteville, TN 37334 |
| Peter Rosen, Esq. | | | X | prosen@levineorr.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8